2025 IL App (1st) 240549-U

No. 1-24-0549

THIRD DIVISION
May 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| LAVERNE CRAYTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| TRANSPORTATION, ILLINOIS | ) | Appeal from the Circuit Court |
| DEPARTMENT OF EMPLOYMENT | ) | of Cook County |
| SECURITY; DIRECTOR, ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT | ) | No. 2023 L 050392 |
| SECURITY, and BOARD OF REVIEW, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Daniel P. Duffy, |
| (ILLINOIS DEPARTMENT OF | ) | Judge Presiding. |
| EMPLOYMENT SECURITY; DIRECTOR, | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, and BOARD | ) | |
| OF REVIEW, | ) | |
| | ) | |
| Defendants-Appellees). | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The agency's decision to deny plaintiff eligibility for unemployment benefits was not clearly erroneous. Affirmed.

¶ 2    In August 2022, plaintiff Laverne Crayton, voluntarily terminated her employment with the Illinois Department of Transportation (IDOT). Plaintiff subsequently applied for unemployment benefits with the Illinois Department of Employment Security (IDES). In her application, she alleged that her quitting was not truly voluntary, but rather the result of IDOT's failure to take proper measures to guard her and her workplace against the spread of the COVID-19 virus. IDES determined that she was ineligible for benefits, and she now appeals that decision.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff was employed by the Illinois Department of Transportation from February 16, 2020 until she voluntarily terminated her employment on August 15, 2022.

¶ 5    Plaintiff marked in her application for unemployment insurance benefits that she voluntarily quit. IDES attempted to contact plaintiff on October 4 and October 6, 2022 for additional details, but its calls were not answered. Accordingly, IDES only had plaintiff's application upon which to make its decision. The application included the following questions and answers:

"Q: What was the circumstance, incident, or reason that caused you to leave your employment?

A: As of 8/16/2022, I would have had to come into the office Monday through Friday, unlike previous I was in the Office Tuesday, Wednesday and Friday, which 2 of these days I am literally the only person working these days which is probably the

reason that I did not get sick. The office was unkempt and unsanitary. Of the 8 employees, six employees caught COVID. I am 64 of age [*sic*] and African American which in resigning was protecting my health and/or life. Prior to leaving, I asked the Manager to have the office deep-cleaned, her reply 'that will not happen.' In another area, still under the same leadership, 3 employees called in the latter part of July, 2022 in the same week with COVID. One new worker sitting across from me with 4 months of service went out with COVID in July, 2022.

Q: What reason did you give for leaving?

A: When the pandemic hit in 2020, we were given laptops to work from home. I have been using state equipment to the my [*sic*] termination. As of August 16, 2022, we were instructed to return all State equipment and buy our own equipment if we wanted to continue to work remotely. Since I could not afford to purchase the tools to work, and I was afraid to come into the office among all of those that were affected with COVID, my only other option was to resign.

Q: Did you have a choice to remain employed?

A: Yes.

Q: If Yes, what steps did you take to explain or resolve the situation?

A: Requesting to continue to using [*sic*] their laptop would have bought me enough time to possibly buy my own equipment. My Manager replied, 'if we make an exception for you, we will to [*sic*] make the same for others.' "

¶ 6        IDOT filed a timely protest with IDES. In it, IDOT asserted that plaintiff's termination was voluntary and no reason was given for her decision to quit. It further stated that continued work was available and plaintiff took no action to avoid quitting.

¶ 7        IDES determined on October 6, 2022, that plaintiff was not eligible for benefits because plaintiff left work voluntarily without good cause attributable to IDOT. IDES concluded that IDOT did not have the ability to control the conditions or acts that prompted plaintiff's departure.

¶ 8        Plaintiff submitted a request for reconsideration dated October 12, 2022, in which she asserted that although IDOT could not control the virus, it had previously deep-cleaned the office and ordered four months of full-time work from home when the COVID-19 pandemic began, so it could have taken additional precautions to protect its employees. IDES scheduled a telephone hearing with an administrative law judge, who was at times referred to as a referee, on January 4, 2023.

¶ 9                          A. Administrative Appeal Hearing

¶ 10       Plaintiff confirmed during the hearing that she had voluntarily terminated her employment and had given a month's notice, during which time she continued to work. She went into greater detail about her fears regarding COVID-19, testifying that she had four different employees who sat near her contract COVID-19 between April 2022 and July 2022. Plaintiff stated that the staff was shifted to full time remote work from home when the pandemic began and returned to the office in May of 2020. When asked why she did not quit earlier if the precautions were insufficient, she answered that the numerous cases of COVID-19 in the office did not begin until April 2022. Plaintiff acknowledged that she was a member of a union and that she did not file a grievance with the union. She spoke to a supervisor and her manager, asking to no avail if they could "at least clean the place." When asked if there was anything else she wished to add, plaintiff stated that office management was relaxing its mask mandate just as there was a spike in reported COVID-19 cases. She

stated that "at that point, that's when I, mean [*sic*], I just made it in [*sic*] my mind. It's time to go. I couldn't, I couldn't work there anymore." She further stated: "with my mental stress and I can assure you, uh, my hair started falling out. It was time for me to go. I could not function." The referee inquired whether she was still allowed to wear a mask and if she did so; plaintiff answered yes to both questions. Plaintiff confirmed that she had no belief that she was going to be fired before she decided to quit.

¶ 11        Danielle Harold (Harold) attended the hearing on IDOT's behalf. She confirmed that she was plaintiff's acting manager in August 2022. Harold testified that plaintiff did not express any concerns about COVID-19 when plaintiff spoke to her about quitting. Plaintiff told Harold that since August 16, 2022 was the deadline by which employees had to return to the office or else have approval to work from home, she had decided to "go ahead and separate." Work from home approval was predicated on plaintiff providing her own equipment and she was not interested in buying her own equipment. Harold testified that plaintiff "had made several comments over the years" about unsafe work conditions with regard to COVID-19. Harold stated that the IDOT policy at the time was to conduct deep cleaning only when an employee who tested positive had direct contact and had been in the building within the last 24 hours. She stated this was not the case when plaintiff requested that a deep cleaning be performed. Harold asserted that most of the cases in the office were in fact in 2021 and plaintiff was never identified as having close contact with anyone who was infected. As a result, Harold believed that plaintiff's decision to quit was a result of the work from home deadline, not COVID-19 concerns. Harold contended that plaintiff was incorrect about the dates when coworkers were sick, as the office had only one instance of an employee contracting the virus in 2022.

¶ 12    In rebuttal, plaintiff stated that she "[didn't] think she would leave that job because [she] didn't have the equipment," especially considering that a coworker had offered to lend plaintiff her computer until plaintiff could get one of her own. Plaintiff stated that three people in the financial services section of the office had contracted COVID-19 in July 2022.[1] Harold asserted, in rebuttal, that the financial services section was "across the hall in a different office area" and therefore any cases there were no threat to plaintiff, especially considering that employees were encouraged to wear a mask if they felt the need to do so. Harold further elaborated on the context of plaintiff's choice to terminate employment, testifying that plaintiff had complained to her on several occasions and to other co-workers that the State should buy her a computer rather than forcing her to buy her own. Harold also recalled plaintiff asking her, when plaintiff was turning in her computer on the day she quit, why she could not just keep and use that computer "since [the State was] just going to scrap it anyway."

¶ 13    The referee affirmed the initial decision, repeating its conclusion that "[plaintiff] had a compelling personal reason to leave the job. However, personal reasons are not attributable to the employer."

¶ 14                              B. Further Appeals

¶ 15    Plaintiff appealed the referee's decision to the agency's board of review, arguing that her fear of the presence of the COVID-19 virus in her office was not a personal motivation, but rather a reasonable concern, and that the referee did not properly assess the facts. The board of review affirmed the decision of the referee. In doing so, the board stated that it found that Harold credibly testified that IDOT's COVID-19 protocols were substantially similar to other

---

[1] The transcript reads "July of 2020," but as plaintiff was using these cases to show that COVID-19 was "prevalent in *** 2022," we presume that plaintiff misspoke or the transcript contains a typographical error.

workplaces, that only one case had been identified in the office in 2022, and that remote work was available to plaintiff if she purchased her own computer. The board cited case law at length in support of its decision and found:

 "[C]laimant did not establish good cause attributable to the employer or that she made a reasonable effort to resolve her Reason [*sic*] for leaving prior to leaving. As to good cause, our focus is on the employer and circumstances it has control over. We note that the dangers inherent in a job not [*sic*] attributable to the employer unless the risks of the job are disproportionately high because the employer acts or fails to act. [Citation.] In this case, there is insufficient evidence to establish the employer either acted or failed to act such to make the work environment less safe. As to reasonable effort, the claimant did not file a union grievance or reasonably pursue the work from home option. Finally, we note the claimant worked through a month long notice period despite her reason for leaving. A claimant must show immediate and continuing non-acceptance of the conditions or acts that caused her to quit and if the worker agrees to work despite the conditions or acts, and then decides at some later date to leave; she has not shown good cause. [Citation.] Based on the foregoing, the claimant has failed to meet her burden under Section 601A of the Act."

¶ 16    Plaintiff appealed to the circuit court, which affirmed the agency's decision. Plaintiff timely initiated the instant appeal.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, plaintiff argues that the agency's decision was erroneous because her decision to quit was not truly voluntary and IDOT did not make a reasonable effort to resolve the cause of her leaving. We note initially that plaintiff's *pro se* brief does not substantially

comply with the requirements of Illinois Supreme Court Rule 341(h)(7), as it makes no citation to the record. Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020). Plaintiff also asserts new facts in her brief that are not contained in the record, as well as plaintiff's personal belief as to what would have occurred in a hypothetical situation. Disregarding those additions, the other deficiencies in the brief are not so severe that we cannot adequately consider plaintiff's contention.

¶ 19 The core question before us is whether plaintiff was eligible for unemployment insurance benefits under the Unemployment Insurance Act and, more specifically, whether she was rendered ineligible for benefits by section 601(A) of the act because she voluntarily left employment with IDOT. 820 ILCS 405/500 (West 2022), 820 ILCS 405/601(A). Section 601(A) renders an applicant ineligible where "he or she has left work voluntarily without good cause attributable to the employing unit." *Id*. Review of agency decisions presents a mixed question of law and fact to which the "clearly erroneous" standard applies. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). We afford an administrative agency significant deference not only because they are in the superior position to judge credibility, but also because the agency possesses expertise in its area of authority. *Id*. at 393-94. An agency's decision is only clearly erroneous "where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *Id*. at 395 (citing *United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 20 The Illinois Administrative Code states:

"b) An individual has good cause for leaving work when there is a real and substantial reason that would compel a reasonable person who was genuinely

desirous of remaining employed to leave work and the individual has made a reasonable effort to resolve the cause of his/her leaving, when such effort is possible.

\* \* \*

c) To be attributable to an individual's employing unit, his or her reason for leaving work must be within the control of the employing unit." 56 Ill. Adm. Code 2840.101(b), (c) (2010).

¶ 21    The only authority plaintiff cites to support her claim of error is a case restating some of the language contained in the sections of the Code replicated above. She contends that her concern over the pandemic was reasonable and that IDOT failed to take reasonable measures to address her concern. We see no reason and plaintiff cites no reason that we should not defer to the agency's findings of fact and credibility. As such, we do not disturb the circuit court's findings that the agency's protocols were comparable to those of other employers and that only one case had occurred in the office in 2022. Even if we accept that plaintiff's level of concern was a reasonable one *and* that IDOT did not take appropriate measures to remedy the problem, plaintiff's own testimony shows that she did not make a reasonable effort to resolve the issue before terminating her employment. Plaintiff testified not only that she could afford to buy a computer if she wanted to, but also that a coworker had offered to lend plaintiff a computer until she could purchase one, if she wished to work from home. The record contains no evidence indicating that plaintiff sought approval to work from home and was denied such approval. Neither the record nor plaintiff offer any reason that working from home would not have satisfactorily resolved the matter and allowed plaintiff to continue her employment with IDOT. Accordingly, we agree with the agency's conclusion that plaintiff was not eligible for unemployment benefits.

¶ 22                                    III. CONCLUSION

¶ 23        For the foregoing reasons, we affirm the IDES decision.

¶ 24        Affirmed.